_____

No. 95-2918EM
_____

Andrew W. Six,                        *
                                      *
                Appellant,            *
                                      *    Appeal from the United States
        v.                            *    District Court for the Eastern
                                      *    District of Missouri.
Paul K. Delo,                         *
                                      *
                Appellee.             *
                           _____

                    Submitted:  April 8, 1996

                     Filed:  August 27, 1996
                           _____

Before McMILLIAN and FAGG, Circuit Judges, and BURNS,* District
      Judge.
                           _____


FAGG, Circuit Judge.


     On April 10, 1987, Andrew W. Six and his uncle, Donald Petary,
terrorized a family in Ottumwa, Iowa.  Six and Petary went to the home of
Don and Stella Allen and their daughters, Christine, who was seventeen, and
Kathy, who was twelve.  Both girls were special education students.  Six
and Petary said they were interested in purchasing the family's truck,
which the family was selling to finance Don's open heart surgery.  Stella
agreed to accompany Six and Petary on a test drive.  Six drove the truck
onto a gravel road and stopped.  While Six held Stella, Petary wrapped duct
tape around her hands.  They then returned to the Allen home, where Don was
waiting outside.  Holding butcher knives to the Allens' throats, Six and
Petary forced the couple back inside their home.

_____

        *The HONORABLE JAMES M. BURNS, United States
      District Judge for the District of Oregon, sitting
      by designation.

Six taped Don's hands and mouth, and took wallets from Stella and Don. Petary fondled Kathy, and Six raped Christine, who was obviously pregnant. At Six's direction, Petary took Kathy and Christine outside and put them inside his car. Six tried to force Stella and Don into the truck at knifepoint, but Don started to run away. Six then slashed Stella's throat, inflicting serious injuries, and she fell to the ground. Seeing her father's flight, Christine escaped from the car, but Kathy, who was trapped next to Petary, could not. After Six jumped into the car, Six and Petary sped off with Kathy, heading south. Three days later, Kathy Allen's body was found in a ditch in Missouri. She had bled to death there after being stabbed in the neck.

At Six's state trial for Kathy's murder, Don, Stella, and Christine Allen testified about the actions of Six and Petary on the evening Kathy was kidnapped. Stella testified Six had slit her throat and Christine testified Six had raped her. Six did not testify during the guilt or penalty phases, but his attorneys suggested Six was under Petary's influence and Petary had killed Kathy. During the penalty phase, seven members of Six's family testified Six is a good person. Six's mother testified Petary had abused both his own children and Six as a child. The jury found Six guilty of first-degree murder, but could not decide whether Six should be sentenced to death or life imprisonment.

The court then undertook Six's sentencing under Mo. Rev. Stat. § 565.030.4 (1986) and found beyond a reasonable doubt the existence of three statutory aggravating circumstances: Six murdered Kathy Allen to avoid arrest, her murder was committed during a kidnapping, and she was killed because of her status as a potential witness in her kidnapping. See id. § 565.032.2(10)-(12). As an additional, nonstatutory aggravating circumstance, the court found Six had raped Christine Allen. The court also found the following mitigating circumstances existed: Six had no significant criminal history, see id. § 565.032.3(1); he confessed to law

-2-

enforcement officers; he was a good son, brother, and family member; and he had been abused as a child. The court decided the mitigating circumstances did not outweigh the aggravating circumstances, and the aggravating circumstances were sufficient to warrant imposition of the death penalty.

Six appealed his conviction and sentence, and the denial of his motion for postconviction relief under Missouri Supreme Court Rule 29.15. The Missouri Supreme Court consolidated Six's appeals and affirmed. State v. Six, 805 S.W.2d 159, 173 (Mo.) (en banc), cert. denied, 502 U.S. 871 (1991). Six filed a motion to recall the mandate and a state habeas petition under Missouri Supreme Court Rule 91, and the Missouri Supreme Court summarily denied the motions. Six then filed this federal habeas petition and the district court denied relief. Six v. Delo, 885 F. Supp. 1265, 1286 (E.D. Mo. 1995). Six appeals. We affirm.

I.

Six contends he was denied effective assistance of counsel at his trial's penalty phase. To succeed on an ineffective assistance claim, Six must show his attorneys' performance was deficient and the deficient performance prejudiced him. Sidebottom v. Delo, 46 F.3d 744, 752 (8th Cir.), cert. denied, 116 S. Ct. 144 (1995).

Six first challenges his trial attorneys' failure to obtain a neuropsychological evaluation of Six and to present the results as mitigating evidence during the penalty phase. This failure was not constitutionally deficient because Six's trial attorneys conducted a reasonable investigation of Six's mental status. Id. The attorneys reviewed psychiatric evaluations that had been prepared for Six's earlier federal trial for Kathy's kidnapping. The federal evaluations suggested Six was under duress and had below average intelligence. The attorneys had a psychiatrist, Dr. A.E. Daniel, perform a thorough examination of Six. Dr. Daniel

-3-

conducted a psychiatric interview of Six for about three hours and reviewed documents provided by Six's attorneys, including a synopsis of the case and another doctor's evaluation. Dr. Daniel evaluated both Six's competency to stand trial and his mental status at the time of the offense. Dr. Daniel's report stated Six had a history of a disorganized childhood, hyperactivity, deafness, and depression. The report concluded Six suffered from drug and alcohol abuse and had a personality disorder with antisocial features. In Dr. Daniel's view, Six was competent to stand trial, was using alcohol and drugs at the time of the offense, and was under duress because of Petary's influence.

According to Six, Dr. Daniel's report alerted Six's attorneys to the need for a full neuropsychological evaluation like the one Dr. Richard Wetzel conducted after the trial. Dr. Wetzel concluded Six had mild brain dysfunction that hampered his ability to control his attention and behavior, and controlled substance abuse could worsen this dysfunction. In Dr. Wetzel's opinion, if Six had been using drugs or alcohol heavily for at least a week before the offense, Six had moderate neuropsychological dysfunction when he committed the crime. Dr. Wetzel stated this dysfunction could have affected Six's ability to premeditate.

Counsel's decision not to further investigate Six's mental status was not constitutionally deficient because the decision was reasonable from counsel's perspective when the decision was made. Id. at 753-54; O'Neal v. Delo, 44 F.3d 655, 660 (8th Cir.), cert. denied, 116 S. Ct. 129 (1995). Dr. Daniel's report did not recommend any further examination and we cannot say his findings would suggest to a competent lawyer that further evaluation was necessary. See Sidebottom, 46 F.3d at 753-54; O'Neal, 44 F.3d at 660. Further, during the state postconviction hearing, one of Six's attorneys testified Six's behavior and statements gave counsel no reason to question Six's mental faculties. See O'Neal, 44 F.3d at 660. In deciding not to seek further examination, Six's

-4-

attorneys reasonably relied on Dr. Daniel's report and the lack of any behavior by Six indicating an abnormal mental state. Sidebottom, 46 F.3d at 753-54; O'Neal, 44 F.3d at 660. In sum, the attorneys' failure to obtain a neuropsychological evaluation was not deficient performance. Sidebottom, 46 F.3d at 753-54; O'Neal, 44 F.3d at 660. Thus, we need not decide whether Six was prejudiced. O'Neal, 44 F.3d at 660 n.6.

Six next attacks his trial attorneys' failure to present other mitigating evidence during the penalty phase. Six contends his attorneys should have presented evidence that he was treated for hyperactivity beginning in preschool, was a neglected child who grew up in a seriously dysfunctional home monitored by social services agencies, and had a hearing loss that was untreated for three years in elementary school.

Six's trial attorneys learned of this additional mitigating evidence during the investigation, but decided the evidence was not significant enough to be helpful. Although the additional evidence would have been relevant during the penalty phase and had some mitigating value, Schneider v. Delo, 85 F.3d 335, 340 (8th Cir. 1996), counsel's decision not to present the evidence was reasonable. Sloan v. Delo, 54 F.3d 1371, 1384 (8th Cir. 1995) (reviewing the reasonableness of counsel's belief de novo), cert. denied, 116 S. Ct. 728 (1996). Counsel testified his penalty-phase strategy was to show Six was a human being whom others cared about, and to present evidence of Six's positive character traits. Counsel decided not to use Dr. Daniel as a witness to prevent the state from using testimony from another psychiatrist to whom Six had made "quasi-confessions." The additional mitigating evidence could have been presented in other ways, but counsel reasonably believed the evidence was not significant enough to build sympathy for Six because of the horrible facts of the case.

Even if counsel's decision not to present the evidence was

unreasonable, we cannot say the additional evidence probably would have made a difference at sentencing. Schneider, 85 F.3d at 340-41 (defendant not prejudiced by failure to present mitigating evidence of attention deficit disorder, insomnia, and social history). It was apparent Six had a hearing problem because counsel had Six remove and adjust his hearing aid during the trial. Six's mother testified he had been abused as a child, and the judge credited the testimony in finding the mitigating circumstance that Six had been abused. We do not believe the additional evidence of neglect and hyperactivity would have changed the sentencing equation.

Six also challenges trial counsel's failure to request jury instructions on two statutory mitigating circumstances: Six acted under extreme duress or the substantial domination of Petary, Mo. Rev. Stat. § 565.032.3(5), and Six was merely an accomplice and minor participant in the murder, id. § 565.032.3(4). Six failed to raise this ineffective assistance claim in the state courts, so the claim is procedurally defaulted. Nave v. Delo, 62 F.3d 1024, 1030 (8th Cir. 1995), cert. denied, 116 S. Ct. 1837 (1996). To excuse his default, Six contends Missouri inconsistently applied Missouri Supreme Court Rule 29.15(b), which at the time of Six's state proceedings, required defendants to raise ineffective assistance claims within ninety days from the trial transcript's filing. See Williams v. Lockhart, 873 F.2d 1129, 1131-32 (8th Cir.), cert. denied, 493 U.S. 942 (1989). Six points out that in 1996 the Missouri Supreme Court relaxed the time requirement in Rule 29.15(b). Six cites no examples of inconsistent application of the earlier ninety-day rule, however. Thus, the rule sufficiently bars habeas review. See Williams, 873 F.2d at 1132.

II.

Six argues the Missouri death penalty scheme requires a jury to decide a defendant's eligibility for death by finding the existence of at least one statutory aggravating circumstance before

a judge can impose a death sentence.  Six argues that because the jury was not polled at his trial, we cannot tell whether the jury made the necessary finding, and thus, the imposition of capital punishment by the court instead of the jury violates his due process and equal protection rights.

Assuming Six is correct about the Missouri statute, the facts do not support Six's argument.  To deadlock on punishment, the jury must have found at least one statutory aggravating circumstance existed.  Missouri's death penalty statute provides the trier must direct a sentence of life imprisonment if the trier does not find at least one statutory aggravating circumstance.  Mo. Rev. Stat. § 565.030.4(1) (1986).  The jury must impose a sentence of life imprisonment if the jury does not unanimously agree the same aggravating circumstance exists.  State v. Griffin, 756 S.W.2d 475, 488 (Mo. 1988) (en banc), cert. denied, 490 U.S. 1113 (1989).  The jury was instructed to this effect, see inst. no. 16, and we must assume the jury followed the instruction.  Because the jury in this case did not impose a life sentence, the jury must have unanimously found the existence of at least one of the five submitted statutory aggravating circumstances, and thus, the jury found Six was eligible for the death penalty.  Griffin, 756 S.W.2d at 488.  Contrary to Six's assertion, there is no "unauthorized presumption of death eligibility" for defendants whose juries deadlock on punishment, and thus, Six was not denied equal protection.

Besides, the Missouri death penalty scheme permits the judge to find the necessary aggravating circumstance when a jury cannot decide on punishment.  Once the jury returned its verdict stating it was unable to agree on punishment, the judge became the sentencer and it was the judge's duty to find the facts and decide the sentence following the same procedure in § 565.030.4(4) initially undertaken by the jury.  State v. Richardson, 923 S.W.2d 301, 323-24 (Mo. 1996) (en banc).  To the extent the judge may have found aggravating circumstances the jury did not find, the Missouri

death sentencing scheme permits it.  As Six recognizes, there is no state or federal constitutional right to have a jury make the findings.  <u>Moore v. Clarke</u>, 904 F.2d 1226, 1233 (8th Cir. 1990), <u>cert. denied</u>, 504 U.S. 930 (1992); <u>Griffin</u>, 756 S.W.2d at 487.  The procedure followed in this case is permitted under the Missouri statute.  Thus, Six's due process rights were not violated.  <u>Griffin</u>, 756 S.W.2d at 488.

In another argument tied to Missouri's statute, Six contends trial counsel was ineffective in failing to request a jury poll after the jury returned the verdict form indicating the jury's inability to agree on punishment.  Six argues we can consider this claim even though it is procedurally defaulted because our failure to consider the claim would result in a fundamental miscarriage of justice.  According to Six, the lack of a jury poll means we cannot tell whether the jury found a statutory aggravating circumstance existed, and thus, Six is not eligible for the death penalty and is actually innocent of his death sentence.  <u>See</u> <u>Nave</u>, 62 F.3d at 1033; <u>Pollard v. Delo</u>, 28 F.3d 887, 888 (8th Cir.), <u>cert. denied</u>, 115 S. Ct. 518 (1994); <u>Sawyer v. Whitley</u>, 112 S. Ct. 2514, 2523 & n.15 (1992).  As we just explained, however, the jury necessarily found Six eligible for the death penalty, because to deadlock on punishment, the jury must have found the existence of a statutory aggravating circumstance.  <u>Griffin</u>, 756 S.W.2d at 488 (jury need not submit aggravating circumstances it has found to court in writing because jury deadlocked on punishment has necessarily found at least one aggravating circumstance).  In any event, the judge found the existence of three statutory aggravating circumstances making Six eligible for the death penalty, and the Missouri statute permits the judge to make the necessary findings when the jury deadlocks on punishment.

III.

Six next contends the mitigating circumstance instruction

-8-

required the jury to find statutory mitigating circumstances unanimously, in violation of his Eighth Amendment rights.  Our earlier cases foreclose this contention.  Griffin v. Delo, 33 F.3d 895, 905-06 (8th Cir. 1994), cert. denied, 115 S. Ct. 1981 (1995); Murray v. Delo, 34 F.3d 1367, 1381 (8th Cir. 1994), cert. denied, 115 S. Ct. 2567 (1995); Parkus v. Delo, 33 F.3d 933, 941-42 (8th Cir. 1994).

IV.

Six next asserts his appellate attorney ineffectively represented him by failing to raise arguments challenging three remarks by the prosecutor during closing argument at the trial's penalty phase.  Although trial counsel did not object to the comments, Six asserts appellate counsel should have challenged the comments for the first time on appeal.  To succeed on this ineffective assistance claim, Six must show "reasonable professional performance [by appellate counsel] could not have omitted the prosecutor's statements from review [for] plain error."  Pollard, 28 F.3d at 889; see Sidebottom, 46 F.3d at 759.

During his closing argument at the penalty phase, the prosecutor said:

> You've watched [Six] during this week, ladies and gentlemen, what remorse has he shown for the death of Kathy Allen?  What remorse has he shown for cutting the throat of Stella Allen?  What remorse has he shown for raping [Christine Allen]?  What remorse has he shown?  And now . . . they have the guts to come here and to ask you for mercy. . . . And you've already decided . . . whether or not he's guilty of the death.  Don't be misled about who actually wielded the knife blow.  I think we all know probably in our hearts who did it, but you've already determined criminal liability for that.  And don't be dissuaded, don't be dissuaded.  What remorse has he shown? . . . . Let's talk now, folks, about courage and let's talk about cowardice.  Because this man and his uncle are cowards . . . . And he sits before you today, a rapist, a killer, a thief and a coward--and a coward.  An attorney speaks eloquently for him, but it doesn't

make him any less of a coward. . . . Have the courage, ladies
and gentlemen, the courage of your convictions to send this
message, that if you invade our homes and you rape our children
and rob our families and you steal our babies from our bosoms
and you take them and you kill them, that if you do those
things . . . it will cost you your life.

We are not convinced the prosecutor's comments were plain error.
Sidebottom, 46 F.3d at 759.  Six contends the prosecutor's remarks about
Six's failure to show remorse were comments on Six's failure to testify.
Unlike the situation in Miller v. Lockhart, 65 F.3d 676, 684 (8th Cir.
1995), the prosecutor here did not directly argue Six's failure to take the
stand and ask for mercy during the penalty phase showed Six did not care
about what he had done.   Instead, the comments were indirect.   A
prosecutor's indirect comments about a defendant's failure to testify
violate the Fifth Amendment privilege against self-incrimination if the
comments show the prosecutor intended to call attention to the defendant's
failure to testify, or if the jury would naturally take the comments as
highlighting the defendant's failure to testify.  Parkus, 33 F.3d at 940-
41; Pollard, 28 F.3d at 890.

Because the comments about remorse were prefaced with a reference to
the jury's observance of Six during the trial, we cannot say the
prosecutor's comments about remorse were intended as anything more than
remarks on Six's general demeanor in the courtroom, or that the jury would
view the comments as anything more.  See Gaskins v. McKellar, 916 F.2d 941,
951 (4th Cir. 1990) (prosecutor's comment that defendant had shown no
remorse was not improper comment on failure to testify), cert. denied, 500
U.S. 961 (1991).  Contrary to Six's selective quotation, the prosecutor's
isolated statement that Six's attorney spoke eloquently for Six was not
tied to the prosecutor's remarks about remorse, but was made in the context
of a later discussion about cowardice.

We reject Six's assertion that the prosecutor suggested he had

-10-

special knowledge about the offense by stating everyone knew in their hearts which man had committed the murder. See United States v. Lahey, 55 F.3d 1289, 1298-99 (7th Cir. 1995) (prosecutor's use of phrase "we know . . ." did not suggest government knew of additional evidence). The prosecutor did not imply he possessed undisclosed information or express his personal opinion. Cf. Newlon v. Armontrout, 885 F.2d 1328, 1336 (8th Cir. 1989) (prosecutor's statement of personal belief that defendant deserved death penalty more than anyone else in ten years was improper), cert. denied, 497 U.S. 1038 (1990). Similarly, the prosecutor did not make a personal appeal to the jury's parental responsibilities to protect their children from crime, but was speaking figuratively about society as a whole and was asking the jury to send a message that anyone who rapes, robs, kidnaps, and kills children will be sentenced to death. Cf. id. at 1336, 1342 (prosecutor's query, "If [the defendant] was going to harm your child, would you kill him?" was improper personalized analogy to jurors' self-defense of their own children).

Even if the comments were improper, the remarks do not violate due process unless the remarks fatally infected the entire penalty phase and rendered it fundamentally unfair. See Pollard, 28 F.3d at 890. Here, the prosecutor's remarks were not egregious or pervasive enough to render the result of the penalty phase unreliable. Parkus, 33 F.3d at 941; Pollard, 28 F.3d at 890-91. Thus, appellate counsel was not constitutionally ineffective for failing to make plain error arguments based on the comments. Pollard, 28 F.3d at 890.

V.

Six asserts his Fourteenth Amendment rights were violated because the state court trial judge was biased. Because Six failed to raise this assertion in state court, the claim is procedurally defaulted. Nave, 62 F.3d at 1030. As cause for his default, Six

asserts the judge failed to disclose facts providing a basis to doubt impartiality.  Based on Six's examination of the state judge at the state postconviction hearing, however, the district court found Six had some knowledge of the bias claim's factual basis before the hearing, 885 F. Supp. at 1271, so Six could have raised the claim in his state postconviction motion.  We agree with this assessment.  Even if Six could show cause, he could not show prejudice because his bias claim lacks merit.  See id. at 1271-72.  Thus, Six is not entitled to an evidentiary hearing to show cause and prejudice for the default.  Keeney v. Tamayo-Reyes, 504 U.S. 1, 11 (1992).

## VI.

Six also contends his Fourteenth Amendment rights were violated because the trial court did not submit instructions on second-degree felony murder as a lesser-included offense of first-degree murder.  We disagree.  The Constitution does not entitle a capital murder defendant to an instruction on every lesser-included noncapital offense.  Schad v. Arizona, 501 U.S. 624, 627 (1991).  The court need only give the jury a supported alternative to the all-or-nothing choice of capital conviction or acquittal.  Id. at 647; Driscoll v. Delo, 71 F.3d 701, 714-15 (8th Cir. 1995), pet. for cert. filed, 64 U.S.L.W. 3765 (May 1, 1996) (No. 95-1779).  Here, the jury was instructed on conventional second-degree murder, which the evidence supported.  See Schad, 501 U.S. at 648.  Because the jury was given the option of convicting Six of a lesser-included offense with support in the evidence, the failure to instruct the jury on second-degree felony murder did not violate Six's Fourteenth Amendment rights.  Driscoll, 71 F.3d at 714-15.

## VII.

Finally, Six contends his due process rights were violated because the Missouri Supreme Court arbitrarily denied his state-

given right to proportionality review of his death sentence. Mo. Rev. Stat. § 565.035 (1986). Six explains that when the court reviewed Six's sentence, the court database used for sentencing comparisons did not include 189 cases in which life sentences were imposed. Id. § 565.035.6 (directing Missouri Supreme Court to compile database of all cases in which sentences imposed were death or life imprisonment without the possibility of parole). Six cites some of the omitted published cases and argues they are more similar to Six's case than the four capital cases cited by the Missouri Supreme Court in upholding Six's death sentence.

We conclude Six was not arbitrarily denied his state-provided right to proportionality review. Williams v. Delo, 82 F.3d 781, 784-85 (8th Cir. 1996); see Foster v. Delo, 39 F.3d 873, 882 (8th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 1719 (1995). The Missouri Supreme Court reviewed Six's death sentence and concluded the sentence was "not excessive or disproportionate to the penalties imposed in similar cases, considering the crime, the strength of the evidence and the defendant." State v. Six, 805 S.W.2d at 169; see Mo. Rev. Stat. § 565.035.3(3). The Constitution does not require us to look behind that conclusion to consider the manner in which the court conducted its review or whether the court misinterpreted the Missouri statute. LaRette v. Delo, 44 F.3d 681, 688 (8th Cir.), cert. denied, 116 S. Ct. 246 (1995); Williams, 82 F.3d at 785.

We affirm the denial of Six's federal habeas petition.

A true copy.

        Attest:

                CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-