United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1871
_____

| | | |
|---|---|---|
| Bounsouay Thatsaphone, | * | |
| | * | |
| Petitioner - Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Douglas Weber, Warden, South Dakota | * | District of South Dakota. |
| State Penitentiary; Mark W. Barnett, | * | |
| Attorney General, | * | |
| | * | |
| Respondents - Appellants. | * | |

_____

Submitted: October 20, 1997
Filed: February 26, 1998
_____

Before RICHARD S. ARNOLD, Chief Judge, LOKEN and HANSEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

Bounsouay Thatsaphone was convicted in state court of third degree rape for engaging in sex with a minor. After the Supreme Court of South Dakota affirmed, Thatsaphone petitioned for federal habeas corpus relief. The district court granted the writ, concluding that Thatsaphone because of his lack of English language skills had been subjected to in-custody interrogation in violation of his constitutional rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). The State appeals. We reverse.

In June 1993, Sioux Falls police detective Bruce Bailey investigated a complaint that twelve-year-old B.J.H. was the victim of a statutory rape. Bailey interviewed B.J.H., who identified Thatsaphone as the culprit. At Bailey's request, Thatsaphone came to the police station for an untaped twenty-two minute interview during which he made incriminating admissions. Thatsaphone was indicted for statutory rape and moved to suppress his statements to Detective Bailey.

Following an evidentiary hearing, the trial judge made the following findings of fact. Thatsaphone is a Laotian immigrant who had lived in the United States for seven years and had worked at a local meat packing plant for six years. When Detective Bailey contacted him by telephone, Thatsaphone said he both spoke and understood English. On June 24, Thatsaphone voluntarily came to be interviewed by Bailey at the police station, accompanied by a friend, Vic Souvannarath, who also spoke English and Laotian. Bailey excluded Souvannarath from the interview "for several reasons including that [Thatsaphone] told Bailey that he understood and spoke English pretty well, that [Thatsaphone] appeared to Bailey to speak and understand English pretty well, that the friend by virtue of his relationship to [Thatsaphone] did not possess the requisite impartiality necessary for an appropriate and accurate interview, and that such friend was not certified by 911 communications as a recognized interpreter of the Laotian language."

Before beginning the interview, Bailey asked Thatsaphone if he understood English. Thatsaphone explained that he had lived in the United States for seven years, had learned English at a local high school, and could speak and understand English pretty well. Bailey then told Thatsaphone that he was not under arrest and would not be placed under arrest that day, that the door to the interview room was closed for privacy but unlocked so he was free to leave, and that he could take restroom breaks at any time. Bailey asked Thatsaphone if he understood; Thatsaphone answered affirmatively. During the interview, Thatsaphone was anxious but not unusually so, Bailey did not use complicated terms or phrases, and Thatsaphone "answered Bailey's

interview questions appropriately and by his answers appeared to understand such questions and the language thereof." Bailey did not administer <u>Miranda</u> warnings at any time. The interview lasted twenty-two minutes, following which Thatsaphone left the police station of his own accord. He was arrested the following day. At the evidentiary hearing, Thatsaphone

> testified before the Court [on] his Motion to Suppress and an interpreter was present throughout such hearing. Almost all of the testimony at said hearing was an interchange directly between the respective attorneys asking questions in English and [Thatsaphone] speaking the answers in English. Neither attorney made any special effort to use simplistic words or phrases. [Thatsaphone] did not address the interpreter very often and . . . only minor points of clarification were involved . . . . The English language was not a barrier to [Thatsaphone's] understanding of all that was occurring at the hearing or Bailey's interview.

Based upon these findings, the trial court denied Thatsaphone's motion to suppress. After his conviction was affirmed, Thatsaphone filed this petition for a writ of habeas corpus, arguing that his constitutional rights had been violated because the Bailey interview was custodial interrogation for <u>Miranda</u> purposes and his incriminating statements to Detective Bailey were involuntary. The district court on its own motion ordered an evidentiary hearing on the question of Thatsaphone's understanding of the English language. At that hearing, three prison tutors testified that Thatsaphone's English language skills were primitive when he was first incarcerated for this offense. Thatsaphone testified that he had understood almost nothing at the Bailey interview and the hearing on his motion to suppress. The magistrate judge recommended that the writ be granted on the ground that Thatsaphone's statements should have been suppressed as involuntary. Without reaching the voluntariness issue, the district court granted the writ, concluding that Bailey's interview was custodial interrogation, at which <u>Miranda</u> warnings were constitutionally required, because of Thatsaphone's "demonstrated limitations in understanding spoken English" and his "lack of familiarity with the

American legal system." The State appeals, arguing that Thatsaphone was not in custody and his admissions were voluntary.

## I. The <u>Miranda</u> Issue

"<u>Miranda</u> warnings are due only when a suspect interrogated by the police is 'in custody.'" <u>Thompson v. Keohane</u>, 116 S. Ct. 457, 460 (1995). "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994) (quotations omitted).

Absent the English language issue, it is clear that Bailey's twenty minute interview of Thatsaphone was not custodial interrogation. Indeed, the case would then be virtually on all fours with <u>Oregon v. Mathiason</u>, 429 U.S. 711 (1977). There, a police officer investigating a theft contacted defendant by phone, and they agreed to meet at the police office. The thirty-minute meeting took place in a room with the door closed. The officer told defendant he was not under arrest, but he was suspected of a burglary and his truthfulness might be considered by the prosecutor or judge. No <u>Miranda</u> warnings were given until after defendant confessed. The state supreme court reversed the conviction on the ground that the interrogation took place in a "coercive environment." The Supreme Court summarily reversed. Because defendant came to the brief meeting voluntarily, was not arrested, and left without police hindrance, the Court concluded he had not been subjected to *custodial* interrogation:

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it . . . . But police officers are not required to administer <u>Miranda</u> warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. <u>Miranda</u> warnings are required only where

there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which <u>Miranda</u> by its terms was made applicable, and to which it is limited.

429 U.S. at 494. Here, too, Thatsaphone came to the interview voluntarily, was told he was not under arrest, and left without hindrance after a short interview. At the outset, Detective Bailey advised that the interview was voluntary and that Thatsaphone was free to leave. The brief interview was less coercive in nature, and was held in a less coercive environment, than other interrogations we have held to be non-custodial for <u>Miranda</u> purposes, such as the station-house questioning in <u>Feltrop v. Bowersox</u>, 91 F.3d 1178 (8th Cir. 1996), <u>cert denied</u>, 117 S. Ct. 1849 (1997), and in <u>Jenner v. Smith</u>, 982 F.2d 329 (8th Cir.), <u>cert. denied</u>, 510 U.S. 822 (1993).

That brings us to the central issue in the case, Thatsaphone's understanding of the English language. Before discussing its merits, we must frame that issue and place it in its proper procedural context. We agree with the district court that a suspect's language skills may be relevant to the "in custody" issue. <u>Cf.</u> <u>United States v. Ceballos</u>, 812 F.2d 42, 48 n.4 (2d Cir. 1987). But the question is not whether Thatsaphone subjectively believed that he was in custody because he did not understand Detective Bailey's cautions to the contrary. The district court erred in treating this as a subjective issue, misreading a passage in <u>United States v. Griffin</u>, 922 F.2d 1343, 1349 (8th Cir. 1990), that added a misleading reference to "subjective belief" to a quote from <u>Berkemer v. McCarty</u>, 468 U.S. 423 (1984). <u>Berkemer</u> *held* that the inquiry is objective -- "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." 468 U.S. at 442. Any doubt on this question was laid to rest in <u>Stansbury v. California</u>, where the Court stated, "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers *or the person being questioned*." 511 U.S. at 319 (emphasis added).

Thus, the ultimate issue is whether a reasonable police officer conducting Detective Bailey's otherwise non-custodial interview would have given <u>Miranda</u> warnings because he realized that the questioning would be perceived by Thatsaphone as custodial due to his limited English language skills. This is a mixed question of constitutional law and fact which the federal habeas courts must review *de novo*. <u>See</u> <u>Thompson v. Keohane</u>, 116 S. Ct. at 465. A critical preliminary question is, on what record should the federal court make this determination? The district court ordered an evidentiary hearing *sua sponte*. First, the court reasoned that Thatsaphone procedurally defaulted the English language issue by not seeking post-conviction relief in state court, but that the State had waived that default. We disagree. The <u>Miranda</u> *issue* was not procedurally defaulted; it was preserved in state court both by Thatsaphone's motion to suppress, on which the state court held an evidentiary hearing, and by his direct appeal. The extent of Thatsaphone's English language skills was an issue he had every opportunity to develop in the state court suppression hearing. If Thatsaphone did not adequately develop the *facts* supporting his motion in state court, that is a different kind of procedural default, one that he may overcome in federal court only with a showing of cause and prejudice. <u>See</u> <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1, 8-12 (1992); <u>McDonald v. Bowersox</u>, 101 F.3d 588, 592 (8th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 2527 (1997). That default was not waived by the State, which timely objected when the district court first ordered an evidentiary hearing.

Second, the district court reasoned that an evidentiary hearing was needed "to develop the factual record," and "to have an independent review of the constitutional issues." As we have explained, Thatsaphone was not *entitled* to a second hearing in federal court because he failed to show cause excusing his failure to develop the factual record in state court. The federal courts retain some discretion to hold non-mandatory evidentiary hearings in habeas cases. <u>Compare</u> <u>Clemmons v. Delo</u>, 124 F.3d 944, 952 (8th Cir. 1997), <u>with</u> <u>Zeitvogel v. Delo</u>, 84 F.3d 276, 279 (8th Cir.), <u>cert. denied</u>, 117

S. Ct. 368 (1996).[1]  However, if the court did not abuse its discretion in holding an evidentiary hearing -- an issue we do not decide -- the court went beyond its habeas authority when it heard testimony rehashing what occurred at the Bailey interview and at the state court suppression hearing, and then reweighed the state court's fact findings as to what was said by whom, and how much Thatsaphone understood or appeared to understand at the Bailey interview and the suppression hearing.  Even when, as here, the ultimate habeas issue is reviewed *de novo*, a state court's findings on "basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators," are presumed to be correct unless the district court finds that one of the exceptions in 28 U.S.C. § 2254 (1988) applies.  Thompson v. Keohane, 116 S. Ct. at 463-64.  A federal habeas court "may not disregard this presumption unless it expressly finds that one of the enumerated exceptions to § 2254 is met, and it explains the reasoning in support of that conclusion."  Burden v. Zant, 498 U.S. 433, 437 (1991).  Here, the district court made no such determination.  Moreover, a federal habeas court may not simply disagree with the state court's factual determinations.  "Instead, it must conclude that the state court's findings lacked even 'fair support' in the record."  Marshall v. Lonberger, 459 U.S. 422, 423 (1983).

Returning now to the merits, we review the ultimate "in custody" issue *de novo*.  See Feltrop, 91 F.3d at 1181.  Giving the state court's primary fact findings the deference to which they are entitled, we conclude that Thatsaphone's limited understanding of the English language provides no objective basis to change our conclusion that Detective Bailey's interview was non-custodial.  Bailey repeatedly asked Thatsaphone if he could speak and understand English, and Thatsaphone

---

[1]The recent amendments to § 2254 enacted by the Antiterrorism and Effective Death Penalty Act of 1996 may limit this discretion to hold evidentiary hearings in habeas cases.  See 28 U.S.C. § 2254(e)(2); Porter v. Gramley, 112 F.3d 1308, 1317 & n.8 (7th Cir. 1997).  But those amendments do not apply to Thatsaphone's noncapital case.  See Lindh v. Murphy, 117 S. Ct. 2059, 2063 (1997).

responded affirmatively. Thatsaphone never expressed a desire to halt the interview, he responded coherently in English, and he remained silent when asked questions he did not want to answer. He rarely used the interpreter provided at the suppression hearing and responded in English to questions posed to him in English. Throughout these proceedings, he has employed both colloquial and sophisticated English terms such as "interrogate," "bodysuit" (describing the victim's clothing), and "get hard" (describing his lack of sexual feeling). In short, Thatsaphone's self-serving testimony at the habeas hearing is belied by the state court record and the findings of the state court judge who observed him at the suppression hearing and at trial. Because Thatsaphone was not in custody when interviewed by Detective Bailey, his constitutional rights were not violated by the absence of <u>Miranda</u> warnings.

## II. Voluntariness

The magistrate judge recommended that Thatsaphone's statements to Detective Bailey were involuntary because, given Thatsaphone's Laotian background, "merely summoning him to the police station, excluding him from his friend, and demanding information was sufficient coercion to overcome [his] resistance to confession." Reviewing this recommendation *de novo*, <u>see</u> <u>United States v. Jacobs</u>, 97 F.3d 275, 279 (8th Cir. 1996), we disagree.

"Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986); <u>LaRette v. Delo</u>, 44 F.3d 681, 688-89 (8th Cir.), <u>cert. denied sub nom.</u> <u>LaRette v. Bowersox</u>, 116 S. Ct. 246 (1995). As we have explained, Detective Bailey in the twenty-minute interview used no improperly coercive questioning tactics, and Thatsaphone's responses and conduct gave no indication that coercion was causing his will to be overborne, either by his lack of English language skills or any other factor. In reviewing voluntariness, we give "great weight to the considered conclusions of a coequal state judiciary." <u>Miller v.</u>

<u>Fenton</u>, 474 U.S. 104, 112 (1985).  We agree with the South Dakota state courts that Thatsaphone's incriminating statements were not constitutionally involuntary.  <u>Compare Beckwith v. United States</u>, 425 U.S. 341, 347-48 (1976); <u>United States v. Hatten</u>, 68 F.3d 257, 262 (8th Cir. 1995); <u>Jenner</u>, 982 F.2d at 333-34.

The judgment of the district court is reversed and the case is remanded with instructions to deny Thatsaphone's petition for a writ of habeas corpus.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.