# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3272

_____

Keith A. Smith,

        Appellant,

v.

Michael Bowersox,

        Appellee.

\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.

_____

Submitted:  June 10, 2002

Filed:  November 29, 2002

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.

After a jury trial in Missouri state court, Keith Smith (Smith) was convicted of committing a double murder.  The jury sentenced Smith to life imprisonment for one of the murders, and the trial judge sentenced him to death for the other.  The Missouri Supreme Court later affirmed Smith's conviction and the denial of his motion for post-conviction relief.  Smith then filed this habeas petition.  The district court[1] denied Smith's petition without a hearing, and Smith now appeals.  We affirm.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

## I.    BACKGROUND

In the fall of 1991, Smith was living as a guest in the Kansas City, Missouri, home of the Reverend Parris Campbell (Campbell).  On the evening of November 17, 1991, Smith and Campbell were in a room downstairs while Campbell's housekeeper, Annie Miller (Miller), was upstairs making dinner.   While they were alone downstairs, Smith choked Campbell, first with his arm and then with an electrical cord.  Smith then went upstairs, took a knife from the kitchen, and went back downstairs where he began stabbing Campbell.

After he murdered Campbell, Smith went upstairs again and told Miller that Campbell needed her downstairs.  Smith followed Miller downstairs, where he also strangled her, first with his hands and then with an electrical cord.  Smith completed the second murder by going back upstairs, getting a pair of scissors, and using the scissors to stab Miller repeatedly.

At some point in the evening, Smith called a cousin for assistance.  Smith placed the bodies of Campbell and Miller in the trunk of a car in Campbell's garage. After taking valuables from Campbell's home, Smith and his cousin got into another of Campbell's cars and drove away.  The two men picked up Smith's girlfriend, Sylvia Ware (Ware), and all three went to a crack house where they traded Campbell's valuables for drugs.  Smith spent the next six days in a series of motels smoking crack.  He was arrested on November 23, 1991, as he and Ware were leaving a motel.

After his arrest, Smith signed a written waiver of his Miranda rights and was interrogated by John Fraise, a police detective (Detective Fraise).  During the interview, but before he confessed, Smith told Detective Fraise, "I'm going to get the chair for this."  Detective Fraise said, "No, you're not, because they don't do that in this state."  Later, after Smith had agreed to confess, Detective Fraise asked Smith whether he had been promised anything in return for his statement.  Smith replied, "You said I wouldn't get the chair."  Detective Fraise denied ever making that

statement, and then asked, "Are you sure [that's] what was said?" Smith responded, "I don't know how to put it, I don't know, it was like you know I ain't gonna get it, if I . . . I don't know, you said I don't remember, I couldn't remember, I just forget."

Smith then confessed to murdering both Campbell and Miller. In describing the murders, Smith repeatedly made references to "Chucky," an animate doll from popular horror movies. Smith claimed that "Chucky" came out of a telephone and, at different points, either told Smith what to do or performed actions himself. A blood test taken twenty to twenty-four hours after the interview, while Smith was still in custody, showed positive results for cocaine and marijuana metabolites. However, Detective Fraise later testified that he thought Smith had used "Chucky" intentionally to describe his own actions, and that Smith was alert and did not appear to be under the influence of drugs during the interview.

Smith was tried almost two and a half years after the police interview. At trial, Smith was represented by a privately retained lawyer. Although Smith's family agreed to pay $7,500, the lawyer ultimately was paid only $4,000. The lawyer concentrated on trying to suppress Smith's confession. His efforts failed, and the confession was admitted into evidence. At trial, Smith's lawyer tried to show that Campbell provoked the murders by making a sexual proposition to Smith. Smith's lawyer called a single witness, a man who drove Campbell's car and who testified that Campbell had made sexual propositions to him in the past. On a Thursday afternoon, the jury found Smith guilty on two counts of first degree murder.

The penalty phase of the trial began the next day at 1:30 p.m. During the penalty phase, Smith's lawyer called four witnesses: (1) Smith, (2) his mother, Ernestine, (3) his grandmother, Ora, and (4) his girlfriend, Ware. Smith's mother and grandmother testified that Smith grew up in a broken home, began smoking marijuana at age six or seven, and was using drugs on a daily basis at the time of the murders. Ware testified that Smith was not a violent person.

The jury agreed on a sentence of life imprisonment for the murder of Campbell. The jury was unable to agree on a punishment for the murder of Miller, although it found at least one statutory aggravating factor. See Six v. Delo, 94 F.3d 469, 475 (8th Cir. 1996).[2] Sentencing then passed to the trial judge, who imposed a sentence of death for the murder of Miller. See Mo. Rev. Stat. § 565.030.4 (1994).

After he was convicted and sentenced, Smith filed a pro se motion for post-conviction relief in the state court. See Mo. S. Ct. R. 29.15. The state motion court appointed a public defender to represent Smith. The public defender filed an amended motion for post-conviction relief with a request for an evidentiary hearing.

The 264 page amended motion contained numerous allegations, only a few of which are relevant on appeal. Smith alleged his trial lawyer failed sufficiently to investigate his mental health, intelligence level, history of substance abuse, and family history. According to the amended motion, Smith's lawyer had "ample evidence" that Smith "had a mental condition which would have . . . mitigated punishment." Smith alleged he was prepared to present expert testimony, a variety of public records, and lay testimony from numerous witnesses, including his mother, grandmother, and girlfriend. Smith did not allege specifically what any witness would say or what any record would relate, nor did he produce any affidavits, expert reports, or records.

---

[2]Missouri's pattern jury instructions, which were given at Smith's trial, direct the jury to return a sentence of life imprisonment if it cannot unanimously agree on at least one aggravating factor. See MAI-CR3d No. 314.48. In the past, where the jury did not impose a sentence of life imprisonment, we have presumed that the jury did find at least one such aggravating factor. See Six, 94 F.3d at 475. However, we note that the Supreme Court's recent decision in Ring v. Arizona, 122 S. Ct. 2428, 2443 (2002), now requires the jury to find an aggravating factor before the judge may impose a sentence of death. We express no opinion as to whether Missouri's pattern instructions and procedures are constitutional under Ring.

In ruling on Smith's request for post-conviction relief, the state motion court found Smith "failed to allege with any specificity what . . . evidence or testimony counsel would have been able to present." On this basis, the state motion court rejected Smith's claims that counsel had been ineffective and denied his request for an evidentiary hearing.

Smith's appeal of the post-conviction ruling was consolidated with his direct appeal. On his appeal to the Missouri Supreme Court, Smith raised two issues relevant to this appeal: (1) whether his confession was voluntary, and (2) whether his lawyer rendered ineffective assistance by failing to conduct an investigation into his mental health and history of abuse. The Missouri Supreme Court affirmed Smith's conviction and sentence. See State v. Smith, 944 S.W.2d 901 (Mo. banc 1997). In upholding the trial court's finding that Detective Fraise had not coerced Smith's confession, the supreme court relied on Detective Fraise's characterization of Smith's mental state during the interview. Id. at 911-12. It also noted that Detective Fraise's comment that "'the chair' is not used in Missouri was, and is, a true statement." Id. at 912. As to Smith's assistance-of-counsel claim, the supreme court held that, except for the fact that he had suffered a "head injury," which the jury heard,[3] Smith had alleged only conclusions and not facts. Id. at 923. In particular, the supreme court noted Smith had "failed to allege what information a second [mental health] evaluation would have produced." Id.

Smith then filed a petition for a writ of habeas corpus in federal district court. His federal petition contained a total of fifteen claims. The three claims relevant to this appeal are: (1) Smith was denied effective assistance of counsel because his attorney "failed to discover and present mitigating mental health evidence during the

---

[3]The Missouri Supreme Court further recognized that the "jury also heard that Smith began smoking marijuana at the age of six or seven, and that the frequency and severity of his drug use increased until at the time of the murders Smith was using PCP and cocaine on a daily basis." Id. at 923.

penalty phase"; (2) Smith was denied effective assistance of counsel because his attorney "failed to discover and present evidence of diminished mental capacity" during the guilt phase; and (3) the admission into evidence of Smith's confession to the police violated his constitutional rights. Smith supported his federal petition with affidavits and an expert report, and he requested an evidentiary hearing.

One of the affidavits filed in support of Smith's petition was submitted by his trial attorney. In the affidavit, Smith's attorney states that he "did no formal penalty phase preparation prior to the guilty verdict." He did not "interview or prepare any witnesses concerning the penalty phase testimony" or "investigate Mr. Smith's social, mental, physical, or environmental history." The attorney had read a mental evaluation prepared by a state psychologist who concluded that Smith does not suffer from mental disease or defect, based in part on the absence of any "reported history of major childhood illnesses, injuries or developmental difficulties." However, he "didn't give a thought to requesting a second mental evaluation."

Some of the factual assumptions of the state psychologist's report are contradicted by affidavits from Smith's mother, Ernestine. According to the affidavits, which were filed in support of the federal petition, Smith was conceived when Ernestine was fourteen years old. During the pregnancy, Ernestine smoked cigarettes, used marijuana, and drank heavily. Before Smith was born, she violently pressed books against her stomach to stop Smith from moving. Possibly as a result of this abuse, Smith was born with an enlarged head. From the time Smith was a baby, his stepfather, uncles, and grandfather regularly beat him on the head. When Smith was three years old, one of his uncles would blow marijuana smoke into his face to get him high. According to Ernestine's affidavits, the physical abuse and drug abuse persisted throughout Smith's childhood. It culminated when a cousin struck Smith in the head with a sling blade in July 1991, approximately four months before the murders took place.

Smith retained a psychologist, Dr. Dennis Swiercinsky (Dr. Swiercinsky), to support his federal habeas petition. In 1998, Dr. Swiercinsky examined Smith and analyzed his mental functioning. According to a detailed report completed by Dr. Swiercinsky, Smith is mildly mentally retarded with a Full Scale IQ of 73 on the Wechsler Adult Intelligence Scale. Dr. Swiercinsky's report also takes note of the "accumulating assaults on [Smith's] brain and neurocognitive functioning." According to Dr. Swiercinsky, the assaults include prenatal exposure to drugs and alcohol, the beatings administered by Smith's male relatives, Smith's own use of drugs and alcohol, and the head injury inflicted with a sling blade in 1991. In the words of Dr. Swiercinsky, this history of abuse has made Smith's mental condition "much worse than would be typical for an individual with only mild mental retardation."

The district court rejected all of Smith's numerous claims without holding an evidentiary hearing. It issued a certificate of appealability on only one issue – whether Smith's constitutional rights were violated by the admission into evidence of his videotaped confession. We granted a certificate of appealability on one additional issue – "whether counsel's representation with respect to the penalty phase of Mr. Smith's trial fell below the standard required by the Sixth Amendment."

On appeal, Smith characterizes his petition as presenting three issues: (1) whether his trial lawyer was constitutionally ineffective in failing to prepare for the penalty phase of his trial; (2) whether his trial lawyer rendered constitutionally ineffective assistance during the guilt phase by failing to investigate and present evidence of diminished mental capacity; and (3) whether the admission into evidence of his confession violated his constitutional rights. The State of Missouri denies that any of these issues provide a ground for relief.

## II.    DISCUSSION

To obtain a writ of habeas corpus, a person in state custody must show that his custody violates the Constitution or laws or treaties of the United States. 28 U.S.C.

§ 2254. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) we apply deferential standards of review to the legal rulings and factual findings of the state courts. See 28 U.S.C. § 2254(d), (e)(1) (supp. IV 1998); Kenley v. Bowersox, 275 F.3d 709, 711 (8th Cir. 2002).

### A. Assistance of Counsel During the Penalty Phase

Smith's first claim addresses whether he received effective assistance of counsel during the penalty phase of his trial. To prevail on a claim of ineffective assistance of counsel, a petitioner must show: (1) his lawyer's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

On appeal, Smith argues that the district court erred in denying relief on his penalty-phase claim without first holding an evidentiary hearing. We generally review the district court's decision to deny an evidentiary hearing for abuse of discretion. See Thatsaphone v. Weber, 137 F.3d 1041, 1046 (8th Cir. 1998). The district court's discretion to hold an evidentiary hearing is constrained from two directions. On the one hand, when an evidentiary hearing is not prohibited by statute, the district court must hold such a hearing if the petitioner has alleged disputed facts which, if proved, would entitle him to habeas relief. See Bliss v. Lockhart, 891 F.2d 1335, 1338 (8th Cir. 1990). On the other hand, under AEDPA, a district court may not hold an evidentiary hearing when the petitioner "has failed to develop the factual basis of a claim in State court proceedings." See 28 U.S.C. § 2254(e)(2).

Missouri argues that Smith forfeited a hearing because he "failed to develop" the factual basis for his claim. As the Supreme Court has held, "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams v.

-8-

<u>Taylor</u>, 529 U.S. 420, 432 (2000). Thus, a petitioner "cannot be said to have 'failed to develop' relevant facts if he diligently sought, but was denied, the opportunity to present evidence at each stage of his state proceedings." <u>Johnston v. Luebbers</u>, 288 F.3d 1048, 1058 (8th Cir. 2002) (quoting <u>Breedlove v. Moore</u>, 279 F.3d 952, 960 (11th Cir. 2002)). In the usual case, diligence requires "at a minimum" that the petitioner "seek an evidentiary hearing in state court in the manner prescribed by state law." <u>Williams</u>, 529 U.S. at 437.

Neither the Rule 29.15 motion Smith filed in state court nor the 264 page amended motion filed by Smith's court-appointed lawyer met Missouri's requirement for an evidentiary hearing. To obtain an evidentiary hearing under Missouri Supreme Court Rule 29.15, the moving party may not rely on conclusions, but must allege facts which, if proven, would warrant relief. <u>See</u> <u>State v. Starks</u>, 856 S.W.2d 334, 336 (Mo. banc 1993). In the amended motion, Smith alleged his trial lawyer neglected "ample evidence" that would have mitigated punishment, but he failed to allege what that evidence was. Smith identified numerous documents and witnesses he would present, but he did not set forth what those documents contained or what the witnesses would say. By relying on the bare conclusion that a more thorough investigation would have turned up mitigating evidence, Smith failed to request a hearing in the manner required by Missouri law.[4]

---

[4]After the state motion court denied relief, Smith filed a motion for reconsideration that did allege particular evidence of abuse and neglect. That motion, however, came too late, since Smith's Rule 29.15 proceeding was governed by Missouri's applicable Rules of Civil Procedure. <u>See</u> Mo. S. Ct. R. 29.15(a). Those rules do not provide for motions to reconsider, <u>see</u> <u>Jacobs v. Howard</u>, 801 S.W.2d 744, 745 (Mo. Ct. App. 1990), and the state court did not consider the information alleged in the motion to reconsider. Smith did not appeal the motion court's denial of his motion to reconsider to the Missouri Supreme Court.

Smith's failure to comply with Missouri law reflects a lack of diligence. See Williams, 529 U.S. at 437. We therefore hold that Smith "failed to develop" the factual basis for his claim, and that the district court properly denied his request for an evidentiary hearing. See 28 U.S.C. § 2254(e)(2); cf. Wilcox v. Hopkins, 249 F.3d 720, 724-25 (8th Cir. 2001) (upholding the district court's decision not to hold an evidentiary hearing where, among other things, the petitioner had not supported his request for a hearing in state court with affidavit evidence). If Smith had developed the factual record of his claim and had been able to establish the mental impairment and history of abuse alleged in his current petition, he might have been entitled to habeas relief. See Williams v. Taylor, 529 U.S. 362, 396-99 (2000). However, without an evidentiary hearing, Smith does not have the evidence necessary to show that his lawyer was ineffective during the penalty phase of his trial. The district court therefore properly denied relief on this claim.

## B.    Assistance of Counsel During the Guilt Phase

The district court denied Smith a certificate of appealability on his claim of ineffective assistance of counsel during the guilt phase. See 28 U.S.C. § 2253(c)(1)(A). We have not granted a certificate of appealability on this claim either, and so we decline to consider it. See Richardson v. Bowersox, 188 F.3d 973, 982 (8th Cir. 1999).

## C.    Voluntariness of Smith's Confession

While a state court's resolution of factual issues is entitled to a presumption of correctness, the ultimate determination of whether a confession was voluntary presents a question of law. Simmons v. Bowersox, 235 F.3d 1124, 1130 (8th Cir. 2001). To determine whether a defendant's confession was voluntary, a court must consider the totality of the circumstances. Withrow v. Williams, 507 U.S. 680, 693 (1993). These circumstances may include, among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition. Id.

A defendant's mental condition cannot render his confession involuntary unless it coincides with improper conduct by the police.  Colorado v. Connelly, 479 U.S. 157, 164 (1986).  It is improper for a police officer to obtain a confession through an express or implied promise of leniency.  See Brady v. United States, 397 U.S. 742, 754 (1970) (citing Bram v. United States, 168 U.S. 532, 542-43 (1897)).  However, such a promise will not render the confession involuntary unless it overcomes the defendant's free will and impairs his capacity for self determination.  See Culombe v. Connecticut, 367 U.S. 568, 576, 602 (1961); United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995).

During the interview, Detective Fraise implied that Smith would not receive the death penalty.  Detective Fraise told Smith he would not "get the chair" because "they don't do that in this state."  This statement is technically true – Missouri uses lethal injection, not the electric chair, to carry out death sentences.  See Mo. Rev. Stat. § 546.720 (1994).  However, any reasonable view of the record shows that Smith and Detective Fraise were not concerned with nice distinctions between electrocution and lethal injection.  Viewed in its context, the implication of Detective Fraise's statement was that Smith would not receive the death penalty.  It was improper for Detective Fraise to use this deceptive promise of leniency in the course of the interrogation.

Nevertheless, we cannot disturb the Missouri courts' conclusion that Smith's confession was not coerced.  Under AEDPA, even the legal rulings of state courts may not be overturned unless they contradict or unreasonably apply federal law that has been clearly established by the Supreme Court.  See 28 U.S.C. § 2254(d)(1); Williams, 529 U.S. at 405-13.  Detective Fraise's deceptive promise is only one of several factors to be considered in evaluating whether Smith's will was overborne. Toward the end of the interview, Detective Fraise backed away from his statement that Smith would not "get the chair," and Smith nevertheless confessed.  Although the evidence before the district court leads us to doubt Smith's ability to cope with Detective Fraise's tactics, that evidence was not before the state courts.  Based on the

-11-

evidence before them, the Missouri courts found that Smith was alert, did not appear to be under the influence of drugs, and consciously referred to the "Chucky" character in an attempt to avoid blame. In light of these factual findings, which are entitled to a presumption of correctness, <u>see</u> 28 U.S.C. § 2254(e)(1), the Missouri courts permissibly concluded that Smith's confession was voluntary.

### D.    Mental Retardation

After this case was briefed and argued, the United States Supreme Court ruled that execution of the mentally retarded violates the Eighth Amendment. <u>Atkins v. Virginia</u>, 122 S. Ct. 2242, 2252 (2002). However, Smith did not raise an Eighth Amendment claim in his federal habeas petition, and we therefore decline to address whether it would violate the Eighth Amendment for Missouri to carry out the sentence of death imposed in this case.

## III.    CONCLUSION

Smith is not entitled to relief on his present application for a writ of habeas corpus. Accordingly, we affirm the judgment of the district court.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.